IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK REYNOLDS : CIVIL ACTION
: NO. 06-1237
v. :
:
THE UNIVERSITY OF PENNSYLVANIA :

O'NEILL, J. OCTOBER 25, 2010

## MEMORANDUM

Plaintiff Frank Reynolds sued defendant the University of Pennsylvania for breach of contract and unjust enrichment in connection with alleged misrepresentations made to Reynolds by Penn. During discovery, Penn served requests for admission on Reynolds. Penn alleges Reynolds improperly refused to admit the facts requested and unnecessarily forced Penn to incur costs to prove facts Reynolds should have admitted. Penn now moves to recover its expenses under Fed. R. Civ. P. 37(c)(2).[1] For the following reasons, I will grant Penn's motion.[2]

## BACKGROUND

The present motion arises out of alleged discovery misconduct on the part of Reynolds. In the underlying lawsuit, Reynolds asserted that Penn had misrepresented the nature of his affiliation with Penn's Wharton School of Business. Reynolds alleged that at least several of the misrepresentations were contained in PowerPoint presentations shown to Reynolds during the

---

[1] Penn filed its motion on July 6, 2010. (Doc. No. 147). Rule 7.1(c) of the Local Rules of Civil Procedure requires that "any party opposing the motion shall serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief . . . ." On July 26, 2010, six days after the deadline for a response in opposition had expired, I ordered Reynolds to file a response. (Doc. No. 163). Reynolds filed his response in opposition on August 3, 2010. (Doc. No. 164).

[2] Presently before me are Penn's motion for attorney's fees and costs and Reynolds's response.

2002 admissions process. He included those alleged misrepresentations in his complaint and referred to them during his deposition.

At some point during discovery Penn came to believe that Reynolds had altered PowerPoint slides in an attempt to support his case against Penn. In other words, Penn believed the alleged misrepresentations contained in the slides had been added by Reynolds in preparation for litigation. It came to this conclusion because its electronic analysis of the slides revealed that changes had been made to the slides with Adobe 6.0 software, which it believed was unavailable in March 2002 when Adler gave the presentation. In order to explore this theory, Penn served requests for admission on Reynolds asking him to admit Adobe 6.0 software was not available to the public until May 2003. Reynolds, citing a lack of personal knowledge, refused to admit the requested facts. Penn then supplemented its requests with a copy of a May 2003 press release from Adobe announcing the release of the new Adobe 6.0 products and again asked Reynolds to amend his responses. After Reynolds refused for a second time, Penn informed Reynolds of its intention to travel to California to depose an Adobe representative. Additionally, Penn warned Reynolds that it considered his refusal to admit the facts to be unwarranted and planned to recover its costs of obtaining the deposition of the Adobe witness pursuant to Fed. R. Civ. P. 37(c)(2). Penn subsequently deposed Randy Swineford, an Adobe representative, who stated Adobe Acrobat 6.0 and related software were not publicly available until May 2003. See Swineford Dep. at 30.

The case eventually proceeded to trial, during which Penn read Swineford's deposition into the record. Reynolds argued that he did not alter the PowerPoint slides. He did not, however, dispute that the software had been released in May 2003. On June 22, 2010, the jury

found that Penn had been unjustly enriched and awarded Reynolds $66,000.00. On July 7, 2010, Penn filed the instant motion to recover the costs incurred in obtaining Swineford's deposition.

ANALYSIS

Penn argues that Reynolds engaged in delay tactics and refused to admit to the release date of the Adobe 6.0 software in order to force Penn to incur additional costs. Penn maintains that it proved the requested facts at trial and insists Reynolds does not qualify for any exception under Rule 37(c)(2). Accordingly, Penn asks me to award fees and costs in the amount of $7,883.00.

Reynolds makes two arguments in response: (1) that Penn failed to prove the truth of the requested facts; and (2) that the requested facts were immaterial in any event. For both reasons, Reynolds argues that an award of fees would be inappropriate.

I.     Rule 37(c)(2) Costs for Failure to Admit

    A.     Legal Standard

Requests for admission under Rule 36 are intended to "narrow the issues for trial which are generally contested." See Warren Pub. Co. v. Spurlock, 645 F. Supp. 2d 402, 445 (E.D. Pa. 2009) (citing United Coal Co. v. Powell Constr. Co., 839 F.2d 958, 967 (3d Cir. 1988)). A party may file requests for admission seeking statements or opinions of fact or of the application of law to fact. See Fed. R. Civ. P. 36(a). The Rule requires the responding party to provide answers on the substance of the matter requested, specifically admitting or denying its truth. See Fed. R. Civ. P. 36(a)(4). Further, the responding party may refuse to respond for a lack of knowledge "only if the party . . . has made reasonable inquiry and the information it knows . . . is insufficient to enable it to admit or deny." See id.; Kutner Buick, Inc. v. Crum &

Foster Corp., No. 95-1268, 1995 WL 508175, at *1 (E.D. Pa. Aug. 24, 1995) (stating need for party to make "a reasonable inquiry").

Rule 37(c)(2) provides for sanctions against a party for improperly denying a Rule 36 request for admission. See Fed. R. Civ. P. 37(c)(2). If the requesting party later proves the matter true, it may move to recover reasonable expenses incurred in making its proof. See id. The Court must award sanctions unless: (1) the request was objectionable; (2) the admission was of no substantial importance; (3) the party failing to admit has a reasonable ground to believe it might prevail on the matter; or (4) there was other good reason for the failure to admit. See id.

"[T]he true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail [on the issue.]" Fed. R. Civ. P. 37 advisory committee's note. Further, an issue is of substantial importance when it is material to the disposition of the case. See S.E.C. v. Happ, 392 F.3d 12, 34-35 (1st Cir. 2004) (finding requested fact was of substantial importance because it would allow defendant to attempt to cast doubt on credibility of SEC's key witness).

B. Application

1. Penn Proved the Requested Matter True

To qualify for Rule 37(c)(2) costs and fees, the requesting party must later prove the matter true. See Fed. R. Civ. P. 37(c)(2). In the instant case, Penn requested Reynolds admit Adobe Acrobat 6.0 and related software was not available to the public until May 2003.

Despite Reynolds's contentions regarding the verdict, I find that Penn has proven the requested matter true. Swineford produced spreadsheets containing internal Adobe data on

4

software availability.  See Swineford Dep. at 10.[3]  According to the data, Acrobat 6.0 was not publicly available until its ship date of May 24, 2003.  See id. at 16-17.  Swineford also adequately explained the nature of Adobe's pre-release software.  Beta versions of the software that existed in 2002 were accessible only to specified pre-release participants, all of whom were internal Adobe personnel and employees.  See id. at 24.

Moreover, Reynolds never seriously disputed the software's release date.  Reynolds only inquired as to whether conversion of the PowerPoint using Adobe 6.0 would affect the created date for the document.  See id. at 43-47.  He presented no evidence to contradict Swineford's testimony.  Therefore, I find Swineford's deposition adequately proved the matter requested–that Adobe 6.0 was not publicly available until May 2003.

2. Penn's Request Was Substantially Important to its Case

Adobe 6.0's public release date was important for two reasons.  First, Reynolds claimed throughout discovery that a PowerPoint presentation given by Joel Adler in March 2002 contained the terms of his contract with Penn.  He included sections of a PowerPoint presentation in his complaint and referred to that PowerPoint presentation repeatedly in his deposition and interrogatories.  Penn's expert concluded that the PowerPoint presentation referenced by Reynolds had been created with Adobe 6.0 software.  Therefore, if Penn were correct that Adobe 6.0 had not been publically released until May 2003, the PowerPoint presentation contained in Reynolds's complaint could not have been the one given by Adler in March 2002 and therefore

---

[3] During the trial, Swineford's deposition was read to the jury.  See Trial Transcript, 6/17/2010, at 117.  Therefore, all citations will reference Swineford's deposition testimony.

could not have contained the terms of the contract. Establishing the release date of Adobe 6.0 was thus a critical step toward establishing the terms of the contract between Reynolds and Penn.

The second reason Adobe 6.0's public release date was important is related to the first. Reynolds's evidence of Penn's breach of contract came almost exclusively through his own testimony. As a result, Reynolds placed his own credibility at issue in the case. If Penn were able to prove that Reynolds had fraudulently altered the PowerPoint presentations, his credibility would have been detrimentally affected and the jury would have been entitled to discount his testimony. Evidence concerning Reynolds's credibility was thus important to the case.

To impeach Reynolds's credibility, Penn asserted that he had altered the PowerPoint presentations and offered the metadata from the PowerPoints as evidence that Reynolds had tampered with the slides. The availability of Adobe 6.0 was an important component of Penn's attempt to impeach Reynolds's credibility. Proof that Adobe 6.0 was not publicly available in March 2002, when Adler gave the relevant presentation, supported its argument that Reynolds had altered the PowerPoint slides. Such a showing could have negatively impacted Reynolds's credibility. See Happ, 392 F.3d at 34-35. The jury is the sole judge of the credibility of witnesses and may take credibility into consideration when rendering its verdict. See Model Civ. Jury Instr. 3d Cir. 1.7 (2010). Therefore, I find Penn's request was substantially important to its case.

3. Reynolds Did Not Have Reasonable Grounds to Believe He Would Prevail on the Issue of the Software's Public Release Date

Penn requested that Reynolds admit the truth of six straightforward and readily

ascertainable facts.[4]  Penn supplemented its request with a press release from Adobe announcing May 2003 as the release date for the 6.0 software.  Penn did not submit complex requests pertaining to facts crucial to Reynolds's success and on which reasonable minds could disagree.  Based on the type of facts requested and the supplemental documents provided by Penn, Reynolds could not have reasonably believed he could prove Adobe 6.0 was publicly released at any time other than May 2003.

Perhaps recognizing this fact, Reynolds limited his cross examination of Swineford to the importance of the release date.  He argued that the release date was insignificant but not that the date was other than May 2003.  My review of the record reveals that the fact that Adobe 6.0 became available in May 2003 was never seriously questioned at trial.  Accordingly, I find Reynolds did not have reasonable grounds to believe he would prevail on the issue of the public release date of Adobe 6.0 software at trial.

II.     Reasonable Fees under Rule 37(c)

    A.     Legal Standards

The party seeking fees bears the burden of showing the request is reasonable.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  The starting point for determining attorneys' fees is the lodestar formula, which is calculated by multiplying the number of hours expended by a reasonably hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The lodestar calculation is presumptively reasonable but District Courts retain discretion to make adjustments to the fee award.  Rode, 892 F.2d at 1138.

---

[4] Penn did not ask Reynolds to admit that he altered the PowerPoints.  Rather, Penn's request attempted to focus and narrow the disputed issues for trial.  See Warren Pub. Co., 645 F. Supp. 2d at 445.

In calculating the hours reasonably expended on the litigation, courts should review the time charged and determine whether the hours listed were reasonably spent on the particular tasks described. Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). Unnecessary, redundant or excessive hours should be excluded. Id. The hourly rate is calculated according to the prevailing market rates in the community. Washington v. Phila. Cnty. Ct. of Common Pleas, 256 F.3d 1031, 1035 (3d Cir. 1995) (citing Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984)). Once the plaintiff has established a reasonable hourly rate, the defendant may dispute the rate with appropriate evidence. Smith v. Phila. Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997). "In the absence of such evidence, the plaintiff must be awarded attorneys' fees at [the] requested rate." Id.

B.  Application

Penn seeks fees and costs in the amount of $7,883.00. It has supported its request with billing records detailing the time spent, the hourly rate, the identity of the attorney and the task performed. See Def.'s Ex. 5. Reynolds makes a general argument that certain fees claimed by Penn are duplicative of those already assessed against Anurag Harsh. See Pl.'s Br. at ¶ 26. He has not, however, specifically challenged Penn's time or hourly rates.

I note at the outset two instances of duplicative billing in Penn's request. Costs for the Adobe witness fee and process server fee[5] were awarded to Penn in its prior fee petition against

---

[5] The process server fee here is the cost of service of process on Adobe.

Harsh.[6]  See Harsh v. Univ. of Pennsylvania, No. 96-1236, Bill of Costs, Def.'s Ex. 3 (Doc. 50) (Oct. 9, 2008).  Accordingly, I will strike those items.

However, all other fees claimed by Penn are specific to the claim against Reynolds and were not previously charged to Harsh.  With regard to those fees, I find the hours spent and the rate billed to be reasonable.  Counsel for Penn charged hourly rates of $175.00 and $270.00 and Reynolds has not introduced evidence to challenge the reasonableness of the claimed rates.  Therefore, in the absence of evidence disputing Penn's rates, I find Penn should be awarded attorneys' fees at the requested rates.  See Smith, 107 F.3d at 225.  Additionally, Penn has not billed for redundant or unnecessary tasks.  The time billed by counsel for Penn is stated with particularity and is reasonable in light of the tasks performed.[7]  See Maldonado, 256 F.3d at 184.  As a result, I will not reduce the time claimed by Penn.

Counsel for Penn billed 33.6 hours at $175.00 an hour and 1.5 hours at $270.00 an hour.  This yields a lodestar of $6,285.00.  See Hensley, 461 U.S. at 433.  Penn has also requested costs and expenses of $1,295.78, which I will reduce to $1,152.78 to account for the $143.00 in costs already awarded to Penn in the Harsh litigation.  Accordingly, I will award fees and costs to Penn in the amount of $7,437.78 pursuant to Rule 37(c)(2).

An appropriate Order follows.

---

[6] The witness fee and process service fees were $43.00 and $105.00 respectively.  See Def.'s Ex. 5.

[7] Penn has also requested $303.00 for the cost of presenting Swineford's deposition at trial but states the June 2010 bill had not been prepared at the time it filed its motion for fees and costs.  Because Penn has not produced billing records to support this request, I make no award for this fee.